UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

EDWARD JAMES SERVIN,

    Petitioner,

  vs.

RICK M. HILL,

    Respondent.

No.  2:12-cv-2914-MCE-EFB P

FINDINGS AND RECOMMENDATIONS

Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a prison disciplinary conviction that he received in 2010 while he was imprisoned at Folsom State Prison.  Petitioner claims that his disciplinary conviction violates his federal constitutional right to due process.  Upon careful consideration of the record and the applicable law, it is recommended that petitioner's application for habeas corpus relief be denied.

**I. Background**

On October 14, 2010, Correctional Officer (C/O) A. Smith wrote a rules violation report (RVR) charging petitioner with "Introduction/Distribution of C/S, in violation of 15 Cal. Code Regs. § 3016(c)."[1]  ECF No. 14-1 at 26.  C/O Smith alleged that:

---

[1]  C/S apparently refers to "controlled substance."

1

1

2

> On Wednesday, October 13, 2010, at approximately 12:00 noon, I completed my initial investigation into criminal activity occurring at the California Rehabilitation Center.  During this investigation I became aware of Inmate Servin, Edward K92197 (213-34L).  Information revealed that Inmate Servin was responsible for the introduction, distribution and sells [sic] of narcotics, tobacco and cell phones.  This introduction was on a routine basis and generally completed through inmates with job assignments outside the secured perimeter.  Inmate Servin would sell his narcotics and have the buyers family members send money to either Ms. Naraporn Aguilar or Ms. Renee Smith, both of these individuals are approved visitors of Inmate Servin.  Inmate Servin will be made aware of this 115 upon receipt of it.   For additional information refer to confidential memorandums placed within the confidential material folder of his C-file.  Inmate Servin is not a member of the MHSDS at any level of care and currently has a TABE score of 12.9.

3

4

5

6

7

8

9

10

*Id.*

11

   Prior to the disciplinary hearing on the RVR, petitioner requested a staff assistant.  *Id.* at

12

27, 31.  Prison authorities determined that the matter did not meet the criteria for assignment of a

13

staff assistant and none was assigned.  *Id.*  However, an investigative employee (IE) was

14

assigned.  *Id.* at 27.

15

   Prior to the disciplinary hearing, the IE met with petitioner.  *Id.* at 31.  Petitioner presented

16

the IE with a hand-written list of questions to ask inmate Monchak, as follows:

17

> Q1. "Do you remember the amount of the loan given to you [sic] by Renee Smith to your wife Brianda Monchak back in May of 2010?"

18

> Q2.  "What was the amount of that loan?"

19

> Q3.  "Do you remember the amount returned by your mother Lydia Monchak?"

20

21

> Q4.  "Was this before or after my first visit with my fiance?"

22

> Q5.   "When did I allegedly sell you any narcotics, dates and times?"

23

24

> Q6.   "About $275.00 sent to his wife Brianda Monchak in the month of May 2010.  Does he recall this transaction?  What was the purpose of Renee Smith my fiancé sending this to Mr. Monchak's wife Brianda Monchak?"

25

26

> Q7.  "My little red phone book has the transaction number for that Western Union between Renee Smith and Brianda Monchak?"

27

28

2

Q8.  "What happened the first time you tried to leave Facility II?"

Q9.  "What happened or changed on your second try?"

*Id.*  However, the IE determined that inmate Monchak was not available to be interviewed because he was on "Out-to-Court status."  *Id.*

Petitioner also asked the IE to locate documents regarding a list of his approved visitors, petitioner's visiting history, and "visiting Staff interviews, video recordings, and surveillance report."  *Id.* at 32.  In response, petitioner was informed in writing that:

> The information you are requesting is not within the scope of the I/E's duties.  The I/E gathers information for the SHO.  The I/E interviews you, gathers information from you, and questions staff and I/Ms who may have relevant information, screen prospective witnesses and submits a report to the SHO, in which you receive a copy.

*Id.*  Petitioner also asked for copies of certain California Penal Code sections.  *Id.*  He was advised that "It's not the responsibility of the IE to provide you with copies of the Penal Code. You have access to the Law Library for these items."  *Id.*

The disciplinary hearing on the RVR was held on November 12, 2010.  *Id.* at 27. Petitioner appeared at the hearing and stated that he was in good health and ready to proceed.  *Id.* He acknowledged that he had received copies of all applicable reports to be used as evidence against him at least twenty-four hours in advance of the hearing.  *Id.*  Those reports included CDC forms 115, 115A, 1030, and 837, and a "Memorandum of D.A. Referral Rejection."  *Id.* Petitioner explained the charge against him to the senior hearing officer (SHO) "in his own words" and stated that he understood the "purpose and procedures of the hearing."  *Id.* Ultimately, the SHO was satisfied that "effective communication" had been established with petitioner.  *Id.*

Petitioner pled not guilty to the charge, stating:

> I wasn't trafficking.  It was a loan.  I helped out I/M Monchek who was in debt.  I paid his debt and he paid me back."

*Id.*  Petitioner also gave the SHO "a sheet of paper with some points to use as evidence to support his Not Guilty Plea."  *Id.*  Those points were as follows:

3

> In May of 2010 Inmate Monchak was in debt and in trouble.  He asked me for help and I gave it to him in the amount of $275.00 sent to his wife Brianda Monchak, in May of 2010 by my fiancé Renee Smith via Western Union.  There is a receipt to prove this.
>
> In June 2010 this money was paid back by his mother Lydia Monchak.  A simple loan that's all.  That explains the Western Union Transactions received and the only physical evidence in 1030 confidentials.
>
> I have no approved visitor named Naraporn Aguilar as stated as fact in the 115.  That is wrong.  She is not my approved visitor.  That was information gathered in 1030 confidentials 128-B and false.
>
> No drugs, cell phones, or tobacco were found on me or my personal property pursuant to this 115 RVR.
>
> Also I had vacated Dorm 213-34 Low over a month prior to this Facility II write up I was in bunk 307-10 Low on 115 it is false that I was removed from 213-34 Low.
>
> Also I never spoke with his family members about any drugs so a 1030 from [their] "wife" or "mother" has no bearing, only conjecture and hearsay.

*Id.* at 33.  Petitioner did not request any witnesses at the disciplinary hearing.  *Id.*

Petitioner was found guilty of a violation of Cal. Code Regs. Tit. 15, § 3016(c); specifically, "Intro/Distribution of Narcotics a Serious Division A2 offense," based on the preponderance of the evidence submitted at the disciplinary hearing.  *Id.*  This evidence included: (1) the allegations by C/O Smith contained in the RVR; (2) the SHO's opinion that petitioner's explanation of his actions was insufficient to "mitigate [his] culpability in this matter;" (3) two confidential memorandums and two confidential information disclosure forms, dated September 3, 2010, and September 20, 2010, which indicated that petitioner had engaged in "the introduction (Trafficking) of narcotics into a state prison," had engaged in sales of "controlled substances, tobacco and cell phones," and "had payments from those [sales] sent to Naraporn Aguilar and Renee Smith;" and (4) the CDC 837 crime incident report.  *Id.* at 28.  The SHO reviewed the report of the Investigative Employee but determined that it provided "no new, relevant, corroborating or mitigating evidence."  *Id.*  The SHO also based the guilty verdict on her own "training and experience."  *Id.* at 29.  The SHO considered petitioner's statements in his defense at the hearing, but found they did "not prove credible in light of the strong evidence against him."

4

1    *Id.* She also found that petitioner's witness statements did not provide any additional relevant

2    information. *Id.*

3            Petitioner was assessed 180 days loss of time credits, 10 days confinement to quarters, a

4    30 day suspension of privileges, a 360 day loss of all visiting privileges, a 720 day loss of contact

5    visiting privileges, permanent suspension of family visiting privileges, and 1 year of mandatory

6    random drug tests. *Id.* at 30.  He was also required to attend a mandatory substance abuse

7    program. *Id.*

8            Petitioner challenged his disciplinary conviction in a petition for writ of habeas corpus

9    filed in the Riverside County Superior Court.  ECF No. 14-1 at 2.  The Superior Court rejected

10   petitioner's arguments, reasoning, in full, as follows:

11               Correctional decisions are reviewed under the deferential "some
                evidence" standard.  Clearly, there is some evidence to support this
12               decision.  The petition is denied.

13   ECF No. 14-2 at 3.

14           Petitioner subsequently challenged his disciplinary conviction in a petition for a writ of

15   habeas corpus filed in the California Court of Appeal.  ECF Nos. 14-3, 14-4.  That petition was

16   summarily denied.  ECF No. 14-5.

17           Petitioner next challenged his 2010 disciplinary conviction in a petition for writ of habeas

18   corpus filed in the California Supreme Court, wherein he raised all of the same claims contained

19   in the petition before this court.  ECF No. 14-6.  The Supreme Court directed respondent to file an

20   informal response addressing petitioner's claim that the IE did not comply with all of the duties

21   required of him by pertinent California regulations.  ECF No. 14-7 at 2.  On October 10, 2012,

22   after receiving respondent's informal response, the Supreme Court summarily denied petitioner's

23   habeas petition.  ECF No. 14-8.

24   **II.  Standards of Review Applicable to Habeas Corpus Claims**

25           An application for a writ of habeas corpus by a person in custody under a judgment of a

26   state court can be granted only for violations of the Constitution or laws of the United States.  28

27   U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or

28   application of state law.  *See Wilson v. Corcoran*, 562 U.S.___, ___, 131 S. Ct. 13, 16 (2010);

1   *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir.

2   2000).

3       Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas

4   corpus relief:

5       An application for a writ of habeas corpus on behalf of a
        person in custody pursuant to the judgment of a State court shall not
6       be granted with respect to any claim that was adjudicated on the
        merits in State court proceedings unless the adjudication of the
7       claim -

8       (1) resulted in a decision that was contrary to, or involved
        an unreasonable application of, clearly established Federal law, as
9       determined by the Supreme Court of the United States; or

10      (2) resulted in a decision that was based on an unreasonable
        determination of the facts in light of the evidence presented in the
11      State court proceeding.

12      For purposes of applying § 2254(d)(1), "clearly established federal law" consists of

13   holdings of the United States Supreme Court at the time of the last reasoned state court decision.

14   *Thompson v. Runnels*, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing *Greene v. Fisher*, ___ U.S.

15   ___, 132 S.Ct. 38 (2011); *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (citing *Williams v.

16   Taylor*, 529 U.S. 362, 405-06 (2000)).  Circuit court precedent "may be persuasive in determining

17   what law is clearly established and whether a state court applied that law unreasonably."  *Stanley*,

18   633 F.3d at 859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)).  However, circuit

19   precedent may not be "used to refine or sharpen a general principle of Supreme Court

20   jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced."  *Marshall

21   v. Rodgers*, 133 S. Ct. 1446, 1450 (2013) (citing *Parker v. Matthews*, 132 S. Ct. 2148, 2155

22   (2012) (per curiam)).  Nor may it be used to "determine whether a particular rule of law is so

23   widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court,

24   be accepted as correct.  *Id.*  Further, where courts of appeals have diverged in their treatment of

25   an issue, it cannot be said that there is "clearly established Federal law" governing that issue.

26   *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

27      A state court decision is "contrary to" clearly established federal law if it applies a rule

28   contradicting a holding of the Supreme Court or reaches a result different from Supreme Court

1  precedent on "materially indistinguishable" facts. *Price v. Vincent*, 538 U.S. 634, 640 (2003).

2  Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the

3  writ if the state court identifies the correct governing legal principle from the Supreme Court's

4  decisions, but unreasonably applies that principle to the facts of the prisoner's case.[2] *Lockyer v.*

5  *Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360 F.3d 997, 1002

6  (9th Cir. 2004).  In this regard, a federal habeas court "may not issue the writ simply because that

7  court concludes in its independent judgment that the relevant state-court decision applied clearly

8  established federal law erroneously or incorrectly.  Rather, that application must also be

9  unreasonable." *Williams*, 529 U.S. at 412.  *See also Schriro v. Landrigan*, 550 U.S. 465, 473

10  (2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent

11  review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'").

12  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as

13  'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v.*

14  *Richter*, 562 U.S.___,___,131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S.

15  652, 664 (2004)).  Accordingly, "[a]s a condition for obtaining habeas corpus from a federal

16  court, a state prisoner must show that the state court's ruling on the claim being presented in

17  federal court was so lacking in justification that there was an error well understood and

18  comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*,131

19  S. Ct. at 786-87.

20      If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

21  court must conduct a de novo review of a habeas petitioner's claims. *Delgadillo v. Woodford*,

22  527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008)

23  (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of §

24  2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering

25  de novo the constitutional issues raised.").

26  ─────────────────
       [2]   Under § 2254(d)(2), a state court decision based on a factual determination is not to be
27  overturned on factual grounds unless it is "objectively unreasonable in light of the evidence
       presented in the state court proceeding." *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*,
28  384 F.3d 628, 638 (9th Cir. 2004)).

The court looks to the last reasoned state court decision as the basis for the state court judgment. *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Richter*, 131 S. Ct. at 784-85. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." *Id.* at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. *Johnson v. Williams*, ___ U.S. ___, ___, 133 S.Ct. 1088, 1091 (2013).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). *Stanley*, 633 F.3d at 860; *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." *Richter*, 131 S. Ct. at 784.

A summary denial is presumed to be a denial on the merits of the petitioner's claims. *Stancle v. Clay*, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012). While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." *Richter*, 131 S. Ct. at 784. This court "must determine what arguments or theories ... could have supported, the state court's decision; and then it must ask whether it is possible

1  fairminded jurists could disagree that those arguments or theories are inconsistent with the

2  holding in a prior decision of [the Supreme] Court." *Id.* at 786.  The petitioner bears "the burden

3  to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" *Walker v.*

4  *Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (quoting *Richter*, 131 S. Ct. at 784).

5          When it is clear, however, that a state court has not reached the merits of a petitioner's

6  claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal

7  habeas court must review the claim de novo.  *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462

8  F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook*, 333 F.3d 1052, 1056 (9th Cir. 2003).

9  **III.  Petitioner's Claims**

10         **A.  State Law Claims**

11         Petitioner raises several claims predicated on state law.  In particular, he claims that the IE

12  assigned to his case refused to perform the duties outlined in applicable state regulations, refused

13  to "develop pertinent facts and evidence," and "failed to preserve a reliable record denying basic

14  protections."  ECF No. 1 at 5; ECF No. 15 at 2, 11.  Petitioner also argues that the decision of the

15  California Superior Court rejecting his habeas claims was unduly "summary, or non-reasoned," in

16  violation of state law.  ECF No. 15 at 10.  He further argues that statutory time limits were not

17  met in issuing the RVR, providing him with the RVR, and holding the disciplinary hearing, in

18  violation of prison rules and regulations.  ECF No. 1 at 6; ECF No. 15 at 12, 30.

19         These claims involve violations of state law or prison regulations, which are not

20  cognizable in this federal habeas proceeding.  The federal writ is not available for alleged error in

21  the application of state law, and habeas corpus cannot be utilized in federal court to try state

22  issues de novo.  Rather, petitioner must show that the decision of the state courts somehow

23  "violated the Constitution, laws, or treaties of the United States."  *Estelle*, 502 U.S. at 68.  *See*

24  *also Waddington v. Sarausad*, 555 U.S. 179, 192 n.5 (2009) ("[W]e have repeatedly held that 'it

25  is not the province of a federal habeas court to reexamine state-court determinations on state-law

26  questions.");  *Rivera v. Illinois*, 556 U.S. 148, 158 (2009) ("[A] mere error of state law . . . is not a

27  denial of due process") (quoting *Engle v. Isaac*, 456 U.S. 107, 121, n.21 (1982) and *Estelle*, 502

28  U.S. at 67, 72-73); *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation

1   of state law . . . binds a federal court sitting in federal habeas"); *Little v. Crawford*, 449 F.3d

2   1075, 1083 (9th Cir. 2006) (quoting *Estelle*, 502 U.S. at 68).  A habeas petitioner may not

3   "transform a state-law issue into a federal one" merely by asserting a violation of the federal

4   constitution.  *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1997).  Thus, to the extent

5   petitioner's claims are based on alleged violations of state laws, such as the California Penal Code

6   and/or California prison regulations, his claims are not cognizable in this federal habeas

7   proceeding.

8   **B.  Due Process**

9   Petitioner also claims that his prison disciplinary conviction violates his Fourteenth

10  Amendment right to due process.  In general, he challenges the reliability of the evidence used to

11  support his conviction.

12  It is well established that inmates subjected to disciplinary action are entitled to certain

13  procedural protections under the Due Process Clause but are not entitled to the full panoply of

14  rights afforded to criminal defendants.  *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974); *see also*

15  *Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985).  The Ninth Circuit has observed that prison

16  disciplinary proceedings command the least amount of due process along the prosecution

17  continuum.  *United States v. Segal*, 549 F.2d 1293, 1296-99 (9th Cir. 1977).

18  An inmate is entitled to no less than 24 hours advance written notice of the charge against

19  him as well as a written statement of the evidence relied upon by prison officials and the reasons

20  for any disciplinary action taken.  *See Wolff*, 418 U.S. at 563.  An inmate also has a right to a

21  hearing at which he may "call witnesses and present documentary evidence in his defense when

22  permitting him to do so will not be unduly hazardous to institutional safety or correctional goals."

23  *Id.* at 566.  *See also Ponte v. Real*, 471 U.S. 491, 495 (1985).  The disciplinary hearing must be

24  conducted by a person or body that is "sufficiently impartial to satisfy the Due Process Clause."

25  *Wolff*, 418 U.S. at 571.

26  The decision rendered on a disciplinary charge must be supported by "some evidence" in

27  the record.  *Hill*, 472 U.S. at 455.  A finding of guilt on a prison disciplinary charge cannot be

28  "without support" or "arbitrary."  *Id.* at 457.  The "some evidence" standard is "minimally

10

1    stringent," and a decision must be upheld if there is any reliable evidence in the record that could

2    support the conclusion reached by the fact finder. *Powell v. Gomez*, 33 F.3d 39, 40 (9th Cir.

3    1994) (citing *Hill*, 472 U.S. at 455-56 and *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987)).

4    *See also Burnsworth v. Gunderson*, 179 F.3d 771, 773 (9th Cir. 1990); *Zimmerlee v. Keeney*, 831

5    F.2d 183, 186 (9th Cir. 1987).   Determining whether this standard is satisfied in a particular case

6    does not require examination of the entire record, independent assessment of the credibility of

7    witnesses, or the weighing of evidence. *Toussaint v. McCarthy*, 801 F.2d 1080, 1105 (9th Cir.

8    1986), *abrogated in part on other grounds* by *Sandin v. Connor*, 515 U.S. 472 (1995).   Indeed, in

9    examining the record, a court is not to make its own assessment of the credibility of witnesses or

10   re-weigh the evidence. *Hill*, 472 U.S. at 455.   The question is whether there is any reliable

11   evidence in the record that could support the decision reached. *Toussaint*, 801 F.2d at 1105.

12         Where a protected liberty interest exists, the requirements imposed by the Due Process

13   Clause are "dependent upon the particular situation being examined." *Hewitt v. Helms*, 459 U.S.

14   460, 472 (1983).   The process due is such procedural protection as may be "necessary to ensure

15   that the decision . . . is neither arbitrary nor erroneous." *Washington v. Harper*, 494 U.S. 210,

16   228 (1990).   In identifying the safeguards required in the context of disciplinary proceedings,

17   courts must remember "the legitimate institutional needs of assuring the safety of inmates and

18   prisoners" and avoid "burdensome administrative requirements that might be susceptible to

19   manipulation." *Hill*, 472 U.S. at 454-55.   The requirements of due process in the

20   prison context involve a balancing of inmate rights and institutional security concerns, with a

21   recognition that broad discretion must be accorded to prison officials. *Wolff*, 418 U.S. at 560-63.

22         In this case, the requirements of procedural due process were satisfied with regard to

23   petitioner's disciplinary proceedings.   He acknowledged at the disciplinary hearing that he had

24   received all applicable reports, including the RVR, at least 24 hours in advance of the hearing.

25   ECF No. 14-1 at 26.   Although petitioner claims that the prison did not comply with all regulatory

26   timelines, due process does not require that the prison comply with its own regulations with

27   respect to time limits and deadlines, so long as the inmate receives notice of the charges against

28   him in advance. *See Dugger v. Adams*, 489 U.S. 401, 409 (1989) ("[T]he availability of a claim

1  under state law does not of itself establish that a claim was available under the United States

2  Constitution."); *Walker v. Sumner*, 14 F.3d 1415, 1419-20 (9th Cir. 1994) (When state prison

3  regulations provide a prisoner with more extensive protections than those *Wolff* requires, the due

4  process clause does not require the state to comply with its own, more generous procedures),

5  *overruled on other grounds, Sandin v. Conner*, 515 U.S. 472 (1995); *Myers v. Klevenhagen*, 97

6  F.3d 91, 94 (5th Cir. 1996) ("A prison official's failure to follow the prison's own policies,

7  procedures, and regulations does not constitute a violation of due process, if constitutional

8  minima are nevertheless met.").  Petitioner was also given a written statement of the evidence

9  relied upon by prison officials and the reasons for the disciplinary action taken against him.

10          As set forth above, an inmate has the right to call witnesses at a disciplinary hearing when

11  permitting him to do so will not compromise the security of the institution.  Petitioner points out

12  that he asked the IE to interview inmate Monchak.  He states that this request for an interview

13  shows his "intent" to present exculpatory evidence at the disciplinary hearing.  ECF No. 15 at 8.

14  However, the record reflects that petitioner did not request inmate Monchak or any other

15  witnesses at the disciplinary hearing, nor did he request a continuance of the hearing in order to

16  obtain witnesses or documentary evidence.  The court also notes that petitioner presented a list of

17  "points" in his defense at the hearing, which was accepted and read by the SHO.  Under these

18  circumstances, petitioner was not denied the opportunity to call witnesses or present evidence on

19  his behalf.

20          Finally, there was "some evidence" supporting petitioner's disciplinary conviction for

21  trafficking in narcotics.  Specifically, as set forth above, the SHO relied on (1) the allegations by

22  C/O Smith contained in the RVR; (2) the SHO's opinion that petitioner's explanation of his

23  actions was insufficient to "mitigate [his] culpability in this matter;" (3) two confidential

24  memorandums and two confidential information disclosure forms, dated September 3, 2010, and

25  September 20, 2010, which indicated that petitioner had engaged in "the introduction

26  (Trafficking) of narcotics into a state prison," had engaged in sales of "controlled substances,

27  tobacco and cell phones," and "had payments from those [sales] sent to Naraporn Aguilar and

28  /////

1   Renee Smith;" and (4) the CDC 837 crime incident report. ECF No. 14-1 at 28. This constituted

2   "some evidence" to support petitioner's disciplinary conviction.

3      Petitioner claims that the evidence was insufficient because "at no time was any form of

4   narcotic ever found to be in possession of petitioner or anyone else." ECF No. 1 at 5; ECF No. 15

5   at 3. However, production of specific evidence is not required under the Due Process Clause.

6   *See Crismond v. Sandon*, No. CV 12-3572-ODW (VBK), 2013 WL 1759924, at * 7 (C.D. Cal.

7   Mar. 26, 2013) ("The Supreme Court has never recognized a due process right to the preservation

8   and testing of physical evidence in the prison disciplinary context"); *Mancilla v. Biter*, No. 1:13-

9   cv-01724-BAM-HC, 2013 WL 6070417, at *6 (E.D. Cal. Nov. 18, 2013) ("there is no legal

10  requirement under federal law that the prison authorities produce any specific evidence" at a

11  prison disciplinary hearing); *White v. Superintendent*, No. 3:13 CV 300, 2013 WL 6512671, at *3

12  (N.D. Ind. Dec. 11, 2013) ("The hearing officer was not required to produce physical evidence to

13  support the charge or to permit White to 'confront' the witnesses or evidence against him."). The

14  fact that there was "some evidence" to support the RVR is adequate, and evidence relied on the

15  SHO satisfies that test.

16     Petitioner also claims that the confidential reports relied on by the SHO were unreliable

17  because they were "false and completely inaccurate" and have "since been proven false." ECF

18  No. 15 at 23, 27. In particular, he states that Naraporn Aguilar is not one of his approved visitors,

19  contrary to the statement in the RVR and the confidential report that she was. Petitioner also

20  argues that that C/O Smith manipulated and falsified the reports in order to make it seem as

21  though there were two confidential informants who gave evidence against him, when actually

22  inmate Monchak was the only confidential informant. *Id.* at 28-29. In essence, petitioner argues

23  that prison authorities failed to ensure that the evidence against him, and particularly the

24  confidential information, was reliable and credible.

25     A prison disciplinary committee's determination derived from a statement of an

26  unidentified inmate informant satisfies due process when the record contains some factual

27  information from which the committee can reasonably conclude that the information was reliable.

28  *Zimmerlee v. Keeney*, 831 F.2d 183, 186 (9th Cir. 1987). "Reliability may be established by: (1)

the oath of the investigating officer appearing before the committee as to the truth of his report that contains confidential information, (2) corroborating testimony, (3) a statement on the record by the chairman of the committee that he had firsthand knowledge of sources of information and considered them reliable based on the informant's past record, or (4) an in camera review of the documentation from which credibility was assessed." *Id.* at 186-87. Additionally, "[p]roof that an informant previously supplied reliable information is sufficient." *Id.* at 187.[3]

Here, the SHO found petitioner guilty of introduction and distribution of narcotics into the prison based in part on statements contained in two Confidential Information Disclosure forms, each of which contained information that a "source" had claimed petitioner "engaged in the introduction (Trafficking) of narcotics into a state prison," and "engaged in the sells [sic] of the controlled substances, tobacco and cell phones and had payments from those sells [sic] sent to Naraporn Aguilar and Renee Smith," who were "approved visitors." ECF No. 14-1 at 28. The information contained in these two forms was deemed reliable because other confidential source[s] had independently provided the same information (Cal Code Regs. tit. 15, § 3321 (c) (2)), the information provided by the source was self-incriminating (Cal. Code Regs. tit. 15, § 3321 (c) (3), and part of the information provided by the source was corroborated through investigation or information provided by non-confidential sources (Cal. Code Regs. tit. 15, § 3321

---

[3]  Cal. Code Regs. Title 15, § 3321 (c) provides:

> A confidential source's reliability may be established by one or more of the following criteria:

> (1) The confidential source has previously provided information which proved to be true.

> (2) Other confidential source have independently provided the same information.

> (3) The information provided by the confidential source is self-incriminating.

> (4) Part of the information provided is corroborated through investigation or by information provided by non-confidential sources.

> (5) The confidential source is the victim.

1   (c) (4).  *Id.*at 35-37.  The information was held confidential because the confidential source had

2   previously provided information which proved to be true (Cal. Code Regs. tit. 15, § 3321 (c) (1)),

3   and because the identity of the source could not be disclosed without endangering the source or

4   the security of the institution.  *Id.* at 35-36.  These findings are sufficient to establish the

5   reliability of the confidential information.  *Zimmerlee*, 831 F.2d at 186-87.

6          The court also notes that the confidential memoranda relied on by the SHO, which were

7   authored by Captain M. Dimmit, stated that an internal investigation into criminal activity

8   occurring at the California Rehabilitation Center was completed by facility staff under his

9   direction.  ECF No. 14-1 at 46.  Upon completion of the investigation, a total of 10 confidential

10  memoranda were submitted that outlined criminal activity such as introduction into the prison of

11  narcotics, cell phones and tobacco.  *Id.*  Additional evidence included "interviews with private

12  citizens, physical evidence and numerous receipts for money transfers using Western Union,

13  Money Grams and Jpay."  *Id.*  Seven inmates, including petitioner, were charged with

14  introduction and distribution of narcotics into a state prison.  *Id.*  In addition to the information

15  provided by the confidential sources, the SHO relied on the statements by C/O Smith in the RVR

16  regarding the results of his investigation; the crime incident report, which stated that a Facility

17  level investigation concluded that 7 inmates were involved in the trafficking of narcotics at the

18  prison; and a report written by C/O Smith which concluded that petitioner obtained drugs from

19  the kitchen and fire crews and then brought them into the prison.  *Id.* at 28-29, 41.

20         Petitioner argues that the confidential reports relied on by the SHO were unreliable

21  because they contained a false statement that payments from petitioner's sales of contraband were

22  sent to Naraporn Aguilar, one of petitioner's approved visitors.  A review of the lodged record

23  reflects that at the second level decision on petitioner's administrative appeal of his disciplinary

24  conviction, the reviewer conducted an interview with C/O Smith about his statement in the RVR

25  that some of the proceeds from the contraband sales were sent to Naraporn Aguilar.  *Id.* at 60.

26  Officer Smith informed the reviewer that "Naraporn Aguilar is not an approved visitor of

27  [petitioner's] but Ms. Renee Smith is."  *Id.*  The reviewer concluded that the incorrect reference

28  to Ms. Aguilar in these documents was simply a "typographical error" that did not "mitigate the

1   charge or change the circumstances of the violation." *Id.*  This court also concludes that the

2   evidence introduced against petitioner at the disciplinary hearing was sufficient to support his

3   conviction, notwithstanding any error in naming Ms. Aguilar in the confidential reports or the

4   RVR as one of petitioner's approved visitors.  As set forth above, the SHO relied on numerous

5   sources of information to support her decision that petitioner was guilty of the charged offense.

6       Petitioner also claims that the evidence against him was "false" and "fraudulent" because

7   the confidential reports stated there were two confidential informants when there was actually

8   only one.  This unsupported allegation fails to establish that the evidence supporting petitioner's

9   conviction was insufficient.  *See Jones v. Gomez*, 66 F.3d 199, 204 (9th Cir. 1995) ("conclusory

10  allegations which are not supported by a statement of specific facts do not warrant habeas relief.")

11  In any event, the court notes that in an administrative appeal form petitioner stated that the two

12  confidential informants who provided information against him were inmate Monchak and Mrs.

13  Monchak.  ECF No. 14-1 at 62.

14      The determination of the California Supreme Court that petitioner's disciplinary

15  conviction was supported by sufficient evidence is not unreasonable in light of the minimally

16  stringent nature of that standard of proof.  It is not the duty of this court to act as the hearing

17  officer and re-determine the nature of petitioner's offenses and punishment.  *See Hill*, 472 U.S. at

18  455.  On the contrary, prison administrators are "accorded wide-ranging deference in the adoption

19  and execution of policies and practices that in their judgment are needed to preserve internal order

20  and discipline and to maintain institutional security."  *See Bell v. Wolfish*, 441 U.S. 520, 547

21  (1979).  Under the circumstances presented here, and for the reasons set forth above, the evidence

22  against petitioner was sufficient to support his disciplinary conviction.

23      Accordingly, for the foregoing reasons, petitioner is not entitled to relief on his procedural

24  due process claim.

25      **C.  Biased Decisionmaker**

26      Petitioner also claims that the SHO was biased against him and acted in an arbitrary and

27  capricious manner in finding him guilty of the disciplinary charge.  ECF No. 1 at 6; ECF No. 15

28  at 24.  He points out that he was found guilty even though no narcotics were found on his person

1    or produced at the disciplinary hearing and that the IE did not interview Inmate Monchak as

2    petitioner had requested.  ECF No. 1 at 6.  Petitioner argues that the SHO would not have relied

3    on the confidential memoranda, which contained "false" information, "if not for bias."  ECF No.

4    15 at 9.  Petitioner also states that the SHO failed to carefully review the confidential material

5    against him, as evidenced by the fact that she appeared to believe there were two confidential

6    sources of information and not just one.  *Id.* at 9-10.  He argues that "the honesty and integrity of

7    the decision maker cannot abide fraud in the form of false claims."  *Id.* at 20.

8         Petitioner also claims that the SHO failed to interview the confidential informants herself

9    to determine whether they were reliable.  *Id.* at 25.  He notes that the RVR and the confidential

10   memoranda falsely stated that Naraporn Aguilar was on petitioner's approved visitors list.  *Id.*  He

11   argues that the SHO improperly relied on the representations of others that this was true without

12   "reviewing pertinent evidence such as visiting histories, calling the witness, having the reporting

13   employee interviewed by the investigative employee, reviewing the confidential information

14   herself, [and] reviewing the actual number of confidential informants which was falsified."  *Id.* at

15   26.  In general, petitioner argues that the SHO failed to ensure that the evidence against him was

16   reliable and sufficient to support his conviction.

17        Inmates are entitled to a fair and impartial decision-maker at disciplinary hearings.

18   *Edwards v. Balisok*, 520 U.S. 641, 647 (1997) ("The due process requirements for a prison

19   disciplinary hearing are in many respects less demanding than those for criminal prosecution, but

20   they are not so lax as to let stand the decision of a biased hearing officer who dishonestly

21   suppresses evidence of innocence."); *In re Murchison*, 349 U.S. 133, 136 (1955) ("[a] fair trial in

22   a fair tribunal is a basic requirement of due process"); *White v. Indiana Parole Board*, 266 F.3d

23   759, 767 (7th Cir. 2001) ("*Wolff* holds that prisoners are entitled to impartial decisionmakers"

24   (citations omitted)).  In order to prevail on a claim of judicial bias, a petitioner must overcome a

25   "strong presumption that a judge is not biased or prejudiced."  *Sivak v. Hardison*, 658 F.3d 898,

26   924 (9th Cir. 2011) (quoting *Rhoades v. Henry*, 598 F.3d 511, 519 (9th Cir. 2010)).

27        There is no competent evidence before this court that the SHO at petitioner's disciplinary

28   hearing was biased or partial or that she acted in an arbitrary manner.  Petitioner has not

17

1   substantiated his allegations that the evidence the SHO relied on was materially "fraudulent" or

2   "false," that the performance of the IE should have alerted the SHO that the charges against

3   petitioner were invalid, that the SHO failed to thoroughly review the evidence, or that the

4   evidence was insufficient to support the SHO's decision.  On the contrary, as described above, the

5   record before the court reflects that the SHO relied on numerous sources of information in finding

6   petitioner guilty of the disciplinary charge and that this evidence was sufficient to support

7   petitioner's conviction.  Certainly, the California Supreme Court's rejection of these arguments is

8   not unreasonable or "so lacking in justification that there was an error well understood and

9   comprehended in existing law beyond any possibility for fairminded disagreement."  *Richter*, 131

10   S.Ct. at 786-87.  Accordingly, petitioner is not entitled to habeas relief on his claim that

11   impartiality or bias on the part of the SHO violated his right to due process.

12   **D.  Performance of Investigative Employee**

13   Petitioner argues that the failure of the IE to obtain the information petitioner requested in

14   advance of the disciplinary hearing, including a response to his questions directed to inmate

15   Monchak and information about his approved visitor list, prevented him from conducting

16   sufficient pre-hearing investigation .  ECF No. 1 at 5.  Petitioner notes that he was in

17   Administrative Segregation when he received the RVR and was "unable to investigate his case."

18   *Id.*  Petitioner contends that the IE's "refusal to develop pertinent evidence, and failing to

19   preserve a reliable record denied basic protections held by petitioner in accordance with due

20   process."  ECF No. 15 at 21.

21   *Wolff* instructs that an inmate should be provided assistance from a fellow inmate or staff

22   member where the inmate is illiterate or the issues are so complex that it is unlikely the inmate

23   could gather and present evidence necessary for an adequate comprehension of the case.  *Wolff*,

24   418 U.S. at 470.  Pursuant to California regulations, a staff assistant will be provided for an

25   inmate "to assist in the preparation, and presentation of a defense at the disciplinary hearing . . .

26   if the inmate is illiterate or non-English speaking, if the issues are so complex that the inmate

27   needs assistance to understand the nature of the charges or the disciplinary process, or if the

28   inmate has a disability requiring staff assistance for his participation in the disciplinary process.

1   Cal. Code Regs. tit. 15, § 3315(d)(2)(A)(1-3).  In this case, a staff assistant was not assigned to

2   petitioner because the SHO found he was able to understand the charges against him, the purpose

3   of the disciplinary proceeding, and the consequences of a guilty finding.  ECF No. 14-1 at 27.

4         As set forth above, any claim that prison authorities violated state regulations in failing to

5   assign a staff assistant to help petitioner with his defense does not state a cognizable claim in

6   federal habeas proceedings.  Petitioner has also failed to show the authorities' failure to assign a

7   staff assistant violated his federal due process rights.  Petitioner does not argue that he is illiterate

8   or that his case was unusually complex.  Thus, he has not shown he had a constitutional right to

9   any assistance from a staff member under *Wolff*, much less assistance that met his expectations.

10   The court also notes that petitioner was allowed to speak in his defense and to present a written

11   document outlining evidence in support of his plea of not guilty.  Petitioner stated prior to the

12   hearing that he was ready to proceed, and he did not request any live witnesses or documentary

13   evidence.  Accordingly, it appears that petitioner was able to adequately present a defense to the

14   charges against him.

15         An investigative employee was assigned in this case pursuant to Cal. Code Regs. tit. 15,

16   § 3315(d)(1), apparently because petitioner was housed in administrative segregation at the time

17   of the disciplinary proceedings.  ECF No. 14-1 at 31; ECF No. 14-7 at 4.  Under California

18   regulations, an investigative employee is assigned if the staff determines that the complexity of

19   the issues require further investigation, the inmate's housing status makes it unlikely that he can

20   collect and present the evidence necessary for an adequate defense, or additional information is

21   necessary for a fair hearing.  Cal. Code Regs. tit. 15, § 3315(d).  An investigate employee acts "as

22   a representative of the official who will conduct the disciplinary hearing rather than as a

23   representative of the inmate."  Cal. Code Regs. tit. 15, § 3318(a)(3).  Petitioner has not

24   demonstrated that he has a constitutional right to the effective assistance of a prison employee

25   who has been appointed to assist the SHO at a disciplinary hearing.

26         For these reasons, petitioner's claim that the investigation conducted by the assigned

27   investigative employee violated his right to due process should be denied.

28   /////

**IV. Conclusion**

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case.  *See* Rule 11, Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED:  November 20, 2014.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE